In re **EXTENDED AREA TELEPHONE SERVICE,
SOUTH BROWARD AND NORTH DADE COUNTIES.**
No. 8299-TP.

Florida Public Service Commission.
November 4, 1965.

The following commissioners participated in the disposition of this matter — EDWIN L. MASON, Chairman, JERRY W. CARTER and WILLIAM T. MAYO.

## BY THE COMMISSION.

The city of Miramar is the fourth largest city in Broward County and has a population of approximately 16,500. Its boundaries extend to the Dade County line. Telephone subscribers in the Miramar area are served by the Hollywood exchange of Southern Bell Telephone and Telegraph Company. During the past five years there has developed in these portions

of Broward and Dade counties a substantial community of interest. Telephone subscribers in these two contiguous areas are concerned about toll charges for telephone calls across the boundary line separating the two exchanges which serve the two portions of what really is one community. Mr. Joseph E. Campbell, president pro tem of the city council of the city of Miramar, has appeared before the commission on behalf of said city council, and the citizens of Miramar, and has requested the commission to give strong consideration to their request for relief from this situation by extending toll free calling privileges between the two areas.

This matter was formally presented to the commission in a recent telephone rate hearing in the city of Miami. During the hearing testimony was presented on behalf of the residents of the Miramar area, and also by representatives of Southern Bell Telephone and Telegraph Company which provides telephone service to the public in the entire area involved in this matter. There appears to be no real controversy over the physical facts which give rise to the problem. Likewise, it is clear that there is complete unanimity in the conviction that there is a pronounced community of interest between the residents of the South Broward portion of the area and those who live in the North Dade portion. Miramar, itself, is served by the Hollywood exchange, while the area across the line in Dade County is served by the National central office which is a part of the Miami exchange. In the present controversy the need for extended area telephone service is between the Hollywood exchange and the National central office of the Miami exchange. No other portion of the Miami exchange is involved.

Miramar, as a part of the Hollywood exchange, presently has extended area service with the North Dade, or Wilson exchange, and also with the Fort Lauderdale exchange. The North Dade or Wilson exchange abuts the Hollywood exchange to the south along the coast, but further west, in the West Hollywood and Miramar area, the abutting exchange to the south is the National central office of the Miami exchange. Under existing service, Miramar residents may call toll free approximately ten miles to the south through the Wilson exchange. However, they cannot call a thousand yards across the Dade County line in the National central office without paying a charge for "long distance" service. The residents of the area contend this is an inequitable and discriminatory situation which the commission should require the telephone company to eliminate.

The views of this commission concerning situations of this kind have been clearly stated in many formal orders during the past several years. Toll charges for "long distance" service between neighboring communities, divided only by arbitrary boundary lines, cannot long be justified in this era of technological advancement. As population density increases in a given section, community of interest becomes more insistent in its demands for less restriction and greater convenience in communication facilities provided for use in the area. Extended area telephone service appears to be the best solution available at the present time to the many problems associated with telephone communication between subscribers in closely associated exchanges in densely populated areas. Is such service needed in a particular area to better serve the public interest? If so, should the telephone company enfranchised to serve the territory be required to provide such extended service? We find no difficulty in these questions in the present case. The need is abundantly demonstrated by the record before us. There appears to be no good reason why the telephone company should not be required to provide extended area telephone service to the exchange areas involved.

In its presentation, the telephone company submitted a study which shows that an additional investment of approximately $178,000 would be required to provide the extended service requested. Further, the study disclosed an estimated net loss from the extended service of some $112,000, annually. The study contemplated extended area service between all of Hollywood and the National central office, only, of the Miami exchange. However, we cannot say from the record that such a loss would continue for an unreasonable period of time, or that it would constitute an undue burden on the earnings of the utility or the cost of service to its subscribers, generally. The enlarged calling scope of the two exchanges would not be sufficient to increase the local exchange rates of the subscribers of either exchange. The telephone company has advised the commission that the proposed extended area service can be made effective not later than September 1967.

Based upon the record before us, we make the following findings —

1. The growth of the Miramar-West Hollywood area in South Broward County, and that portion of North Dade County immediately across the county line to the south, have combined

to create one general neighborhood with a strong community of interest between the residents of the two areas. Toll charges for "long distance" telephone calls between these two neighboring segments of what is virtually one community are contrary to the public interest and should be eliminated.

2. There is a public need for extended area telephone service between the two areas involved, and such extended service would be in the public interest.

3. Southern Bell Telephone and Telegraph Company, which provides telephone service to the Miramar-West Hollywood area through the Hollywood exchange, as well as service to that portion of North Dade County immediately across the county line and south of the Miramar section through its National central office of the Miami exchange, should be required to proceed without unreasonable delay to institute such extended area telephone service between said areas so that the subscribers in the affected exchanges may avail themselves of the benefits thereof at the earliest possible date, but in no event not later than September 1967; provided, however, that only that portion of the Miami exchange served through the National central office shall be included in said extended service with the Hollywood exchange.

4. The local exchange rates for each of the areas involved in this proceeding, after extended service becomes available, should be the rates which are applicable for the rate group in which each such area falls at the time its local calling scope attains and maintains the required level for the time required in the commission's regrouping rules, unless otherwise ordered by the commission in appropriate proceedings.

5. The losses which the telephone company estimates it may incur as a result of providing extended area service between the areas described herein, if such losses do in fact materialize, will not, on the basis of the record herein, cause such a reduction in the company's overall earnings as to justify an increase in its rates to subscribers, generally.

It is therefore ordered that Southern Bell Telephone and Telegraph Company be and it is hereby directed and required to proceed without delay with the development and implementation of the necessary plans for providing extended area telephone service between its Hollywood exchange, which serves the Miramar-West Hollywood area, and the National central office of the Miami exchange, so that the subscribers of said

exchange and central office may have the benefits of such extended service at the earliest possible date consistent with the findings in this order, but in no event, not later than September 1967. It is further ordered that said telephone company keep this commission fully informed concerning its progress in carrying out the requirements of this order.